## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERONIMO F. ROSADO, JR., | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 24-CV-6087 |
| | : | |
| THE CITY OF CHESTER COUNTY, | : | |
| PENNSYLVANIA, *et al.*, | : | |
| *Defendant*. | : | |

## MEMORANDUM

**Pappert, J.**                                    **February 19, 2025**

Geronimo F. Rosado, Jr. filed this lawsuit seeking to recover personal property following an eviction from an apartment he and Lauren Wissman[1] leased from Defendants Andrew and Linda Kurtas.  For the following reasons, the Court will dismiss his Complaint without prejudice to amendment.

---

[1] Although Rosado is the only Plaintiff listed in the caption of the Complaint (*see* ECF No. 3 at 2-3, ¶ 5), he continually refers to "plaintiffs and familia" throughout his Complaint.  To the extent Rosado intended to bring claims on behalf of his minor children or any other plaintiffs, including Wissman, he may not do so.  "[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim.  *See Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) (quotations omitted)).  Additionally, *pro se* litigants who are not attorneys may not represent anyone else in federal court, including their children.  *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-3 (3d Cir. 1991) (father could not pursue claims on behalf of minor children).

I[2]

Rosado's Complaint[3] is lengthy, disjointed, and largely incomprehensible, making the allegations and claims difficult to discern.  Named as Defendants are the "City of Chester County, Pennsylvania,"[4] the Housing Authority of Chester County ("HACC"), McCright & Associates,[5] Andrew and Linda Kurtas (collectively the "Kurtas Defendants"), identified as the property owners for 318 Broad Street, Spring City, Pennsylvania ("the subject property"), and Leo T. White, Esquire.  (Compl. (ECF No. 3) at 4-5.)  Rosado also names John A. Hipple,[6] a Chester County Magisterial District Judge, and his alleged "disciples who committed pirate acts," *i.e.*, John Doe #1, identified as a constable, and John Does #2 and #3, identified as "peace officers."  (*Id.* at 4.)

---

[2] The following allegations are taken from the Complaint and publicly available records of which this Court takes judicial notice.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in determining whether a pleading has stated a claim).  The Court adopts the pagination supplied by the CM/ECF docketing system.

[3] Rosado has filed a "Verified Affidavit Complaint for Replevin Chattels, Conversations, Property Damages, and Seizures" (*see* ECF No. 3 at 2-52) and a "Complaint for Replevin and Lien for Property" (*see* ECF No. 3 at 53-62).  Because the claims in these pleadings appear to overlap, the Court will interpret these pleadings as constituting the entire Complaint in this matter.

[4] Rosado avers that the "City of Chester County, Pennsylvania. Is the Mayor for Chester County And legally responsible all parties, and damages."  (Compl. at 4.)  This allegation is confusing because Chester County is made up of numerous cities.  It is unclear as to which city Rosado refers.  Also, Chester County is not governed by a mayor.

[5] According to its website, McCright & Associates works with public housing agencies across the United States conducting inspections and managing more than 150,000 Housing Choice Vouchers.  *See* McCright & Associates, https://mccright.com/About-McCright (last visited Feb. 10, 2025).

[6] Rosado misidentified the surname of Magisterial District Judge John A. Hipple as "Hippie" in the Complaint.

Rosado previously asserted claims against some of these same defendants in a prior civil action before this Court. *See Rosado v. City of Chester County*, No. 24-3802, 2025 WL 364069, at *1 (E.D. Pa. Jan. 31, 2025). In that case, Rosado alleged his civil rights were violated when a state court judgment was entered against him, and a writ of possession issued, for the residential property he and Wissman leased from the Kurtas Defendants,[7] resulting in his "unlawful eviction" on August 6, 2024. *Id.* However, because Rosado sought review and rejection of an adverse state-court judgment that resulted in his eviction, Rosado's claims were barred by the *Rooker-Feldman* doctrine and the Court dismissed his case. *Id.* at *5.

It appears Rosado's current Complaint seeks to recover his personal property from the apartment he and Wissman leased from the Kurtas Defendants, and from which they were evicted on August 6, 2024. (Compl. at 2, 5-7, 57.) He also seeks monetary damages for any personal property he was unable to recover. Rosado also asserts that "false charges" were filed against him while he was attempting to reclaim his personal property on August 30, 2024. (*Id.* at 18.)

Rosado avers that before the Court is his "verified affidavit complaint for replevin unlawful seizure to recover Property from unjustified seizures." (*Id.* at 2.) He also avers, *inter alia*, that Judge Hipple, John Does #1-3, and the Kurtas Defendants acted "without legal authority or legal justification" on August 30, 2024. (*Id.*) As noted

---

[7] On May 8, 2024, the Kurtas Defendants initiated a state court eviction proceeding against Rosado and Wissman, who in turn filed a cross complaint on May 28, 2024. *See Kurtas v. Rosado*, MJ-15301-LT-0000094-2024; *Rosado v. Kurtas*, MJ-15301-CV-0000140-2024 (Chester Cnty.). A hearing was held before Judge Hipple on July 9, 2024, who entered judgment against Rosado and Wissman in both matters on July 12, 2024. *Id.* An Order for Possession was requested and issued by Judge Hipple on July 23, 2024. *Id.* Rosado and Wissman were served with the Order for Possession on July 24, 2024 and told to vacate the premises by August 6, 2024. *Id.*

in more detail below, Rosado's allegations are presented mostly in sentence fragments, and the Court has done its best to decipher them.

On August 09, 2024, Rosado allegedly filed a complaint with the Spring City Police Department against the Kurtas Defendants claiming that he did not have adequate notice to recover his personal property following his eviction.  (*Id.* at 7.)  He also filed a "Writ of Replevin" in the Chester County Court of Common Pleas on August 12, 2024, asserting that Judge Hipple, John Does #1-3, and the Kurtas Defendants were "unlawfully in possession" of his personal property.  (*Id.* at 8.)  At some point thereafter, the Kurtas Defendants contacted Rosado, notifying him that he could recover his personal property on August 30, 2024, and that he would have access to the apartment from 10:00 a.m. until 5:00 p.m. on that day.  (*Id.*)

On August 30, 2024, Rosado was "running late, [allegedly due] to company error reservations with U-Haul facility unavailability," and he arrived at the property at 11:50 a.m.  (*Id.* at 9.)  Upon arrival, Rosado was met by John Doe #1, who allegedly had been waiting for Rosado since 10:00 a.m.  (*Id.*)  Rosado avers that Doe #1 was "hostile, aggressive, shouting, in a malice tone, inciting harassment, to dominate and provoke an altercation. While restricting speech."  (*Id.*)  Doe #1 initially told Rosado that he feared for his life as Rosado approached, but then allegedly told Rosado that he wasn't scared and that he'd "take off [his] badge and fight."  (*Id.*)  Rosado started recording, and Doe #1 "became nervous" and "immediately stop[ped] the harassment."  (*Id.* at 9-10.)  Doe #1 told Rosado that he had until 5:00 p.m. to obtain his personal property, but also told Rosado that if the Kurtas Defendants "say it's over sooner, it's over.  If you refuse to leave You will be Arrested, charged with trespass understood?"  (*Id.* at 10 (emphasis

4

omitted).)  Doe #1 left, allegedly "never seen Again."  (*Id.*)  After Doe #1 left, Rosado

noticed that his "65 Inch. Roku Television was maliciously kick-in by foot, a footprint on

TV."  (*Id.*)  Although unclear, it appears that Rosado alleges that Doe #1 damaged his

television "intentionally in retaliation, without due process of law."  (*Id.*)

     When John Doe #2 arrived, he reminded Rosado that he had until 5:00 p.m. to

retrieve his personal property.  (*Id.* at 10-11.)  Rosado claims that Doe #2 started a

"Preliminary investigation, harassment, and interrogation, without due process of law."

(*Id.* at 11.)  Doe #2 questioned Rosado about a "broken plate," and Rosado

acknowledged that the concrete cracked when he dropped a weight on it.  (*Id.*)  Doe #2

also told Rosado that the neighbors were making noise complaints, and Rosado

explained that he had fallen down the steps with the "baby bed, and vanity desk"

because the second-floor staircase was narrow.  (*Id.*)

     At 4:03 p.m., Rosado sent a text message to the Kurtas Defendants to let them

know that he was almost done and that "no one caused any property damages."  (*Id.* at

11-12.)  Rosado asserts that because he was the only one packing and moving, he had to

bring everything outside and line it up on the sidewalk and porch.  (*Id.* at 12.)

     At 5:18 p.m., Doe #2 returned to the property and told Rosado that it was time to

go.  (*Id.*)  Doe #2 also told Rosado that "everything from the porch to the front sidewalk

is forfeited" and that if Rosado stepped over, he would "be charged with trespassing."

(*Id.* at 13.)  Rosado attempted to speak with the Kurtas Defendants, who were present

at the subject property, but Doe #2 told Rosado that he could no longer "recover

property from porch or in front of house" unless he could retrieve it with a "stick."  (*Id.*)

Rosado, who allegedly was humiliated, attempted to use a stick to obtain his property.

(*Id.*)  While doing so, Rosado told Doe #2 that the sidewalk to the front of the house was public property, and he would "file a lien in Federal Court on the property and interfering while depriving property rights."  (*Id.*)  Rosado also alleges that Doe #2 asked a neighbor named Maureen whether Rosado's property could remain on the grass and sidewalk, and she responded that it was okay.  (*Id.* at 14.)  Rosado claims that Doe #2 continued to harass him and his family while they were on public property loading up the U-Haul, "depriving life, liberty, and property. Due process, procedural due process, and Equal protection of Laws."  (*Id.* at 13-14.)

Rosado contends that Doe #2 conspired with Doe #3 and "Started acting like the KKK."  (*Id.* at 15.)  Rosado told them to stop "hiding behind [their] Badge" and that if they wanted to look for criminals, the "City of Philadelphia police Department [is] hiring [and] you can apply there."  (*Id.*)  When Doe #2 asked Rosado to provide the spelling of his name, Rosado responded, "you know who we are, why are you still harassing us, to subject an illegal search, and seizure, {we} do not consent."  (*Id.*)  Rosado avers that Doe #2 started to interrogate Wissman, allegedly "Using coercion, and deception, to subject And execute the illegal search and seizure, without probable cause."  (*Id.* at 16.)  Rosado contends that Doe #3 failed to intervene.  (*Id.*)  Rosado took Wissman's phone and began recording the "illegal, search, and seizure."  (*Id.*)  At that time, Doe #2 told Rosado that he and Wissman would be criminally charged with trespassing, and that Rosado would be receiving additional charges.  (*Id.*)  Rosado allegedly "Placed Defendants. John Doe #2. And John Doe #3. Peace officers on judicial notice if any Criminal charges are filed, will be forced to file a Federal Lien, against the peace officers and property seizures."  (*Id.* at 17 (emphasis omitted).)

Rosado alleges that because he "did not feel safe. To return and pick Up U-Haul," he "had to forfeit property U-Hail overnight." (*Id.*)  He claims that the next morning, on August 31, 2024, he was in an accident with the U-Haul, and he suffered cuts and bruises when his head went "flying through windshield." (*Id.*)  Rosado claims he "had to forfeit U-Haul after being involved in accident." (*Id.*)  On September 2, 2024, Rosado contacted the Kurtas Defendants and their "new attorney," Leo T. White, who "maliciously stated all property has been disposed" and cannot be recovered.  (*Id.* at 47, 56.)  On September 6, 2024, he was "contacted by U-Haul to recover property, all merchants were damaged from accident as a direct result of property seizures." (*Id.* at 17.)  Rosado contends that he is "suffering from depression [and] stress" and is "homeless with loss of property." (*Id.* at 18.)

Rosado asserts that on August 30, 2024, Doe #2 filed "false charges" against him and Wissman. (*Id.*)  Specifically, he claims that false trespassing, noise, and harassment charges were filed against him, and false trespassing charges were filed against Wissman. (*Id.*)  On September 19, 2024, Rosado and Wissman entered guilty pleas before Judge Hipple "under duress, coercion, [and] deception." (*Id.* at 18-19.) Rosado asserts that the hearing before Judge Hipple was "unconstitutional, an abuse of process." (*Id.* at 18.)  He contends Judge Hipple and Doe #2 committed "fraud, bribery, racketeering, Extortion, with the intent to defraud plaintiffs. and familia without consent, under commerce, forced to co-sign fraud, under duress, coercion, and deception, without due process of law." (*Id.* at 19.)  Rosado seeks more than a million dollars in monetary damages and the return of his "seized" property. (*Id.* at 20, 45, 50, 57.)  He also requests various injunctive and declaratory relief. (*Id.* at 45.)

7

A review of public records reveals that Rosado was cited by the Spring City Borough Police Department for the summary offenses of defiant criminal trespass, disorderly conduct – unreasonable noise, and harassment in violation of 18 Pa. Cons. Stat. §§ 3503(b)(1)(i), 5503(a)(2), and 2709(a)(3), respectively. *Commonwealth v. Rosado*, MJ-15301-NT-0000350-2024, MJ-15301-NT-0000351-2024, MJ-15301-NT-0000358-2024 (MDJ Chester). Wissman was also cited by the Spring City Borough Police Department for the summary offense of defiant criminal trespass in violation of 18 Pa. Cons. Stat. §§ 3503(b)(1)(i). *Commonwealth v. Wissman*, MJ-15301-NT-0000349-2024 (MDJ Chester). All offenses occurred on August 30, 2024, and the citing officer is listed as Joseph T. Moore. (*Id.*) Rosado and Wissman pled guilty to all charges on September 19, 2024, and were each sentenced to pay fines and costs.[8] (*Id.*; *Rosado*, MJ-15301-NT-0000350-2024, MJ-15301-NT-0000351-2024, MJ-15301-NT-0000358-2024; *see also* Compl. at 64-70.)

In addition to the Complaint, Rosado filed a Motion to Vacate Judgment Pursuant to Federal Rule of Civil Procedure 60(b) (ECF No. 3 at 71-74), a Motion for an Order to Appoint a Referee (ECF No. 5), and a Motion to Intervene and Long-Term Restraining Order (ECF No. 6).

## II

Since Rosado is proceeding *in forma pauperis* (ECF No. 11), his Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a

---

[8] Wissman was ordered to pay a total of $472.44 in fine and costs, and Rosado was ordered to pay a total of $1292.94. (Compl. at 19, 56, 64-70.)

claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in Rosado's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

Because Rosado is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and "apply the applicable law, irrespective of whether the pro se litigant mentioned it be name," *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act

as an advocate to identify any possible claim that the facts alleged could potentially support.").

A complaint also may be dismissed for failing to comply with Federal Rule of Civil Procedure 8. *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019); *see also Ruther v. State Kentucky Officers*, 556 F. App'x 91, 92 (3d Cir. 2014) (*per curiam*) ("A district court may sua sponte dismiss a complaint for failure to comply with Rule 8."). To conform to Rule 8, a pleading must contain a short and plain statement showing that the plaintiff is entitled to relief. *See* Fed. R. Civ. P. 8(a)(2). The United States Court of Appeals for the Third Circuit has explained that in determining whether a pleading meets Rule 8's "plain" statement requirement, the Court should "ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims." *Garrett*, 938 F.3d at 93 (citation omitted). The important consideration for the Court is whether "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the merits." *Id.* at 94.

"[A] pleading that is so 'vague or ambiguous' that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8." *Garrett*, 938 F.3d at 93; *see also Fabian v. St. Mary's Med. Ctr.*, No. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) ("Federal Rule of Civil Procedure 8 requires that pleadings provide enough information to put a defendant on sufficient notice to prepare their defense and also ensure that the Court is sufficiently informed to determine the issue.") (quotations omitted). The important consideration for the Court is whether, "a pro se complaint's language . . . presents cognizable legal claims to which a defendant can respond on the

merits." *Garrett*, 938 F.3d at 94.  Dismissals under Rule 8 are "'reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'"  *Id.* (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).

## III

## A

Rosado's Complaint is lengthy, rambling, and disjointed, referencing numerous federal and state statutes as the basis for his claims.[9]  His Complaint does not allege facts sufficient to state a plausible claim, and it also fails to comply with Rule 8.  Under Federal Rule of Civil Procedure 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  Additionally, each allegation must be "simple, concise and direct."  *See DiGenova v. Unite Here Local 274*, 673 F. App'x 258, 260 (3d Cir. 2016) (*per curiam*) (citing Fed. R. Civ. P. 8(d)(1)).  *See* Fed. R. Civ. P. 8(d)(1).  "Taken together," Rules 8(a) and (d)(1), "underscore the emphasis placed on clarity and brevity by the federal pleadings rules."  *See Talley v. Harper*, No. 14-1411, 2017 WL 413069, at *2 (W.D. Pa. Jan. 31, 2017) (citing *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996)).

Rosado's Complaint is best described as a "kitchen sink" or "shotgun" complaint because it seeks to bring "every conceivable claim against every conceivable defendant."

---

[9] A "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other."  *Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)); *Alexis v. Sessions*, No. 18-2099, 2018 WL 5077899, at *2 n.1 (D.N.J. Oct. 18, 2018).

*See Talley*, 2017 WL 413069, at *2.  Courts have repeatedly criticized this type of pleading as "troublesome for many reasons":

> For one thing, complaints like [that] . . . unfairly burden defendants and courts.  The plaintiff who files such a shotgun complaint shifts onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support.  This is not the job of either a defendant or the Court.  It is the plaintiff's burden under Rule 8 to reasonably investigate his claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them.
>
> It is important to note that a "kitchen-sink" or "shotgun" complaint also harms the plaintiff who brings it.  In most cases, a genuine dispute that supports a viable legal claim underlies a plaintiff's complaint.  But this genuine dispute becomes almost impossible to discern when it is buried in pages of various allegations, some of which may not rise to the level of a constitutional claim.

*Id*.  Rosado's Complaint is mostly conclusory recitations of statutory language.  For instance, Rosado lists the following claims throughout his Complaint, without further factual connection in support thereof:

> 42 U.S.C. 1983; Civil Rights Violations, Deprivation of Rights, under Color of law. . . . 14th Amendment; due process, procedural due process, life, liberty, property, and Equal protection of laws. 1st, 4th and 14th Amendment; Protections and prohibition. Retaliation, Speech, and seizures, False Charges. Conspiracy. . . . Harassment. Intentional infliction of Emotional distress. Trespass. Interference with property rights. Chattels, Conversation (theft). Property seizures. Property damages. Abuse of process. False Charges. Retaliations. Mail Fraud. . . . False Imprisonment. Retaliation. Malicious Prosecution. False Charges. Defamation.

(Compl. at 28-29 (numbering and headings omitted); *see also id.* at 24-25, 29-30, 33-37, 40-42.)

Liberally construing the Complaint to the outer bounds of reason, the Court understands Rosado to be claiming that his eviction from the subject property was unlawful and that his personal property was seized without legal authority or justification.  He seeks recovery of that personal property and contends he was subjected to "false" charges while attempting to reclaim it on August 30, 2024.  The factual basis for these assertions, however, is not clear.  In drafting the Complaint, rather than describing the alleged actions of each Defendant, Rosado utilized a system that cross-references the names of Defendants and prior allegations, making what the named Defendants are alleged to have done or failed to do a guessing game.  Additionally, the allegations are presented mostly in sentence fragments.  The fractured nature of the pleading makes the claims incomprehensible, especially when combined with its volume.  For example, he alleges:

> 1. At all times relevant Paragraph. (16-107) are incorporated herein by reference to prosecute Count-1. Paragraph. (16-32). Incorporated as though Paragraph. (49-68). fully set forth in length. Paragraph. (35-48). In Breach of HAP. Contract engagement agreement.

> WHEREFORE. Plaintiffs. and Familia. Maintains May 01, 2024, were discriminated against, during Section. 8. HAP. Voucher program Abatement retaliated For mailing Defendants. Chester County Housing Authority, Linda Kurtas, and Andrew Kurtas, certified Mail **{Notice to Terminate HAP. Contract & Complaint}.** Pursuant to 24 CFR. 982.309(b).(1). (i). Section. (c). (1). THAT follows 24 CFR. 982.306 (b). (1). (2). Section. (c). (1). (2). (3). (4). (5). (i). (ii). (iii). (iv). (6). (e). and (f). the chains **Paragraph. (16-29).** False eviction, Retaliation, and discriminated against and suffered property seizures, chattels, conversations, theft, caused intentional infliction of emotional distress, Trespass and defamation, damages in the amount **1.5** million dollars.

> \* \* \*

> 2. On August 30th, 2024, Defendants. John Doe #2. Badge. #107. John Doe #3. Linda Kurtas, and Andrew Kurtas, actions were Unauthorized,

excessive, and subjected Plaintiffs. to discrimination, thefts, chattels, conversations, trespass, damages. And false charges.

3. Defendant. John Doe #2. Badge. #107. The preliminary investigation was unlawful Without legal authority or legal justification Paragraph. (50-54). (69-75). Fraud & Bribery.

4. Defendant. John Doe #2. Badge. #107. Harassment was unlawful without legal authority or legal justification Paragraphs. (60-68)., (69-75)., (76-91 )., (92-96)., (97-107). Fraud, Bribery, and Retaliation.

5. Defendant. John Doe #2. Badge. #107. Intentionally with malice and malicious Intent Interfered with property rights, and was unlawful without legal authority or legal Justification, fraud and bribery, Paragraph. (49-54)., (55-59)., (60-68)., (69-75)., (76-91 )., (92-96)., and (97-107).

\* \* \*

3. Defendant. John Doe #2. Who refused to provide Badge. No. violated 1). 42 U.S.C. 1983. Civil Rights Act. 2). 1st Amendment. Speech, Retaliation, and religious beliefs, RULE of LAW. 3). 4'" Amendment. Unreasonable Search and seizures. 4). 14th Amendment. Due process, procedural due process, life, liberty, and property, and Equal protection of laws.

\* \* \*

14. Defendant. John Doe #2. Badge. 107. Subjected plaintiffs. and familia. To an illegal Search, and seizure, Paragraph. See., {Affidavit of Replevin Complaint} Paragraph. (49-107). While restricting speech interfering with property rights Paragraph. (60-68). And retaliation Paragraph. (76-77). (78-91). (92-96). And. (97-107). Executed false criminal charges, false imprisonment, and malicious prosecution, with the intent to defraud and carry out fraud and bribery for Linda Kurtas, and Andrew Kurtas, falsely claiming in the affidavit of probable cause defendants are victims.

\* \* \*

16. Plaintiffs, and Familia. August 30th, 2024, property seizures See., {Affidavit of Replevin Complaint} Paragraph. (49-54). (55-59). (60-68). (69-75). (76-91). (92-96). (97-107). Underline property seizure, was unlawful, malicious, and with out notice of property rights, Hearing, Court Order. Or right to be heard, deprivation of life, liberty, and property, due process, procedural due process & Equal protection of laws.

\* \* \*

18. As a result of Defendants JOHN DOE #2. BADGE. 107. Linda Kurtas, and Andrew Kurtas, See., {Affidavit of Replevin Complaint} Paragraph. (60-68). (Property seizures, and interfering with property rights, and Speech, Paragraph. (62-65). (66-68). (69-75). (76-91). (92-96). And. (97-106). Plaintiffs. suffered damages **Subtotal. Subtotal. 41,863, 00** and defamation, and intentional infliction of emotional distress damages 1.5 million dollars.

(*Id.* at 20, 25-26, 32, 56-57.) (bolded emphasis in original).

The pleading does not contain a short and plain statement of Rosado's purported entitlement to relief or "present cognizable legal claims to which a defendant can respond on the merits." *Garrett*, 938 F.3d at 93-94. Because the facts are alleged in an unclear and disjointed manner, the Complaint fails to provide fair notice of the grounds upon which Rosado's claims against each Defendant rest and dismissal of the Complaint on this basis alone is warranted. *See Prelle v. United States by Prelle*, No. 22-1453, 2022 WL 16958896, at *1 (3d Cir. Nov. 16, 2022) (*per curiam*) ("A complaint must contain sufficient clarity to avoid requiring a district court or opposing party to forever sift through its pages in search of the nature of the plaintiff's claim." (internal quotations and citations omitted)). Even affording the Complaint the most liberal construction, however, Rosado's Complaint fails to state a claim for relief for the additional reasons that follow.

### B

Rosado continues to contend that the August 6, 2024 eviction was "unlawful without proper procedure" and based on "discriminatory reasons." (Compl. at 39; *see also id.* at 5-7, 20.) He also alleges Judge Hipple lacked jurisdiction, acted without consent pursuant to the Federal Magistrate Act, and committed acts of fraud and bribery. (*Id.* at 5-7, 20.) In fact, Rosado has also attached to his Complaint, a "Motion

to Vacate Judgment Pursuant to Federal Rule of Civil Procedure 60(b)."  (*Id.* at 71-74.)
In the motion, Rosado requests that the Court "vacate the judgment" entered by Judge
Hipple on July 12, 2024.  (*Id.* at 71.)

In Civil Action No. 24-3802, Rosado asserted similar, if not the same, claims
against the Kurtas Defendants, Judge Hipple, HACC, and McCright & Associates.  *See
Rosado*, 2025 WL 364069, at *1.  By Memorandum and Order entered January 31,
2025, the Court concluded that Rosado's claims were barred by the *Rooker-
Feldman* doctrine and dismissed his case for lack of jurisdiction.  *Id.* at *5.  To the
extent Rosado again seeks review and rejection of an adverse state-court judgment that
resulted in his eviction, there is no federal subject matter jurisdiction over his claims.
*See Nelson v. United States Corp.*, No. 21-2807, 2023 WL 8701297, at *3 (E.D. Pa. Dec.
15, 2023) ("Courts have routinely held that federal actions challenging ejection
proceedings or foreclosure actions in state court, including the enforcement of a writ of
possession issued by a state court, are barred by the *Rooker-Feldman* doctrine.")
(collecting cases); *see also Kuznicki v. Nat'l Church Residences of Penn Hills, PA*, No.
23-2143, 2024 WL 129842, at *3 (W.D. Pa. Jan. 11, 2024) ("[T]he Court . . . cannot
directly or indirectly review, negate, void or provide relief that would invalidate the
judgment of eviction.").

C

Rosado brings his constitutional claims pursuant to 42 U.S.C. § 1983.  "To state
a claim under § 1983, a plaintiff must allege the violation of a right secured by the
Constitution and laws of the United States, and must show that the alleged deprivation
was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42,

48 (1988). "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." *Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995).

1

Rosado names City of Chester County, Pennsylvania (Mayor), the HACC, and McCright & Associates as Defendants, but does not allege any specific facts about them, nor does he specifically attribute conduct to any of these Defendants.[10]  For this reason, the claims against them are not plausible. "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

2

---

[10] In fact, the only assertions concerning these Defendants are Rosado's allegations that they somehow acted in conspiracy with one another "to carry out Fraud & Bribery" and should "Be Enjoined & Restrained, as a matter of LAW." (Compl. at 5, 18, 33, 43-44.) These allegations are wholly conclusory and do not give rise to a plausible conspiracy claim. *See Great W. Mining & Mineral Co.*, 615 F.3d at 179 (no conspiracy claim where plaintiff "failed to allege except in general terms the approximate time when the agreement was made, the specific parties to the agreement . . . , the period of the conspiracy, or the object of the conspiracy").

Whether a private entity is acting under color of state law – *i.e.*, whether the defendant is a state actor subject to liability under § 1983 – depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists:  (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

Rosado has not alleged facts to support a plausible conclusion that the Kurtas Defendants or their attorney, Leo T. White, Esquire, meet any of the foregoing tests, and nothing in the Complaint suggests any factual or legal basis for concluding that these Defendants are state actors who could be held liable under § 1983.  *See, e.g., Dejesus v. Vicky*, No. 21-1403, 2021 WL 1546228, at *3-4 (E.D. Pa. Apr. 20, 2021) (finding that employee of apartment complex and rental company itself were private individuals or entities involved in property rental and not state actors for purposes of constitutional claims) (citing cases); *see also Hussein v. New Jersey*, 403 F. App'x 712, 716 (3d Cir. 2010) (*per curiam*) (affirming dismissal of constitutional claims against landlord because landlord was not a state actor); *Benford v. Smith*, No. 04-337, 2005

WL 1325003, at *3 (E.D. Tenn. June 3, 2005) (finding that private landlords, even ones participating in the Department of Housing and Urban Development's Section 8 housing program, are not considered state actors and thus cannot be liable under § 1983); *see also Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("[a]ttorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."). Accordingly, Rosado has not stated a plausible constitutional claim against the Kurtas Defendants or Attorney White.

### D

Rosado purports to assert claims against Judge Hipple based on actions the judge is alleged to have taken in connection with Rosado's eviction and the disposition of summary offenses against him. (*See* Compl. at 5-7, 18-20, 23, 31, 36.) Rosado claims that the proceedings before Judge Hipple were "an abuse of process" and that he deprived him of his civil rights by issuing "unlawful Court Order[s]." (*Id.* at 5-7, 18-20, 55-56, 72-73.) However, Rosado's claims against Judge Hipple are not plausible because judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction.[11]  *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (*per curiam*); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (*per curiam*). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme*

---

[11] Both judges of general and limited jurisdiction, including magisterial district judges, are entitled to judicial immunity. *See Figueroa v. Blackburn*, 208 F.3d 435, 441 (3d Cir. 2000) (concluding that magisterial district judges, even though they preside over courts of limited jurisdiction, are entitled to protections of judicial immunity).

*Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000).  Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'"  *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).  Because judges must feel free to act without fear of incurring personal liability for their actions in court, judicial immunity remains in force even if the actions are alleged to be legally incorrect, in bad faith, malicious, or corrupt, *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991), or are taken as a result of a conspiracy with others, *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).  As Rosado's claims against Judge Hipple are based on acts he took in his judicial capacity while presiding over matters over which he had jurisdiction, Judge Hipple is entitled to absolute judicial immunity.  *See Lee v. Gallina Mecca*, No. 22-2871, 2023 WL 5814783, at *4 (3d Cir. Sept. 8, 2023) ("But even accepting Lee's allegations as true, judicial acts that appear to be unfair, malicious, or *ex parte* are not stripped of their judicial immunity); *Palmer v. PHA*, No. 21-2906, 2021 WL 3662401, at *4 (E.D. Pa. Aug. 17, 2021) (judges entitled to absolute judicial immunity based on acts they took in their official capacities while presiding over eviction proceeding); *Martin v. Bicking*, 30 F. Supp. 2d 511, 513 (E.D. Pa. 1998) (District justice was judicially immune from liability for actions taken by justice arising out of plaintiff's trial and sentencing for summary offenses**)**.

E

Rosado alleges that false charges were filed against him,[12] and he pled guilty to all charges before Judge Hipple "under duress, coercion, [and] deception" and "without due process of law." (Compl. at 18-19, 25-27.) He contends he was maliciously prosecuted "with the intent to defraud and carry out fraud and bribery." (*Id.* at 56.) But again, the public records show Rosado was cited by Spring City Borough Police Officer Joseph T. Moore for the summary offenses of defiant criminal trespass, disorderly conduct, and harassment. *Commonwealth v. Rosado*, MJ-15301-NT-0000350-2024, MJ-15301-NT-0000351-2024, MJ-15301-NT-0000358-2024 (MDJ Chester). He pled guilty to all three charges on September 19, 2024, and was sentenced to pay fines and costs in the amount of $1292.94. (*Id.; see also* Compl. at 64-70.)

To the extent Rosado's claims challenge the constitutionality of his summary offense convictions, he loses. "[T]o recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation) — no matter the relief sought

---

[12] To the extent that Rosado asserts that he was illegally seized in connection with the issuance of charges, merely being issued a summons does not constitute a seizure. *See Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403, 421 (E.D. Pa. 2020) (citation omitted), *aff'd*, No. 22-1960, 2023 WL 4418213 (3d Cir. July 10, 2023) (*per curiam*).

(damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) — if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)).

Rosado never alleges his convictions were invalidated, and the public dockets indicate they remain intact. *See Garrett v. Murphy*, 17 F.4th 419, 429 (3d Cir. 2021) ("*Heck* is clear that the favorable-termination requirement is a necessary element of the claim for relief under § 1983[.]"). Since success on Rosado's claims challenging the prosecution that led to his convictions would necessarily imply the invalidity of those convictions, these claims are not currently cognizable in a § 1983 action. *See, e.g.*, *Gilles v. Davis*, 427 F.3d 197, 209 n.8 (3d Cir. 2005) ("[U]nder *Heck,* both a guilty plea and an ARD are sufficient to bar a subsequent § 1983 claim."); *see also Olick v. Pennsylvania*, 739 F. App'x 722, 725-26 (3d Cir. 2018) (*per curiam*) (applying *Heck* to convictions for summary offenses).

### F

Rosado's claims concerning the failure to return his personal property are best characterized as due process claims. The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing before the government can deprive an individual of a liberty or property interest. To establish a procedural due process violation, a person must first demonstrate that he has been deprived of a constitutionally protected property or liberty interest. *Renchenski v. Williams,* 622 F.3d 315, 325 (3d Cir. 2010). Only upon finding that a protected interest is asserted does a court consider the constitutional

sufficiency of the procedures associated with the interest.  If a liberty or property interest is found, the next step in the due process inquiry is to determine what process is due.  Stated another way, in order to state a plausible Fourteenth Amendment due process claim, a plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life liberty, or property, and (2) the procedures available to him did not provide due process of law." *Rosado v. City of Coatesville*, No. 19-2426, 2020 WL 1508351, at *3 (E.D. Pa. Mar. 30, 2020) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 255, 234 (3d Cir. 2006)).

A plaintiff may also assert a claim under the "substantive" prong of the Due Process Clause, which bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.  *Zinermon v. Burch,* 494 U.S. 113, 125 (1990).  Due process is not a technical conception with a fixed content unrelated to time, place, and circumstance.  *Gilbert v. Homar,* 520 U.S. 924, 930 (1997). Rather, "due process is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972).

Rosado does not explain how the actions or inactions of any named Defendant violated his due process rights.  Notably, following his August 6, 2024 eviction, the Kurtas Defendants provided Rosado with notice and an opportunity to recover his personal property from the subject property on August 30, 2024, giving him seven hours to do so.  (Compl. at 8.)  With about an hour left in his allotted time, Rosado sent a text message to the Kurtas Defendants to let them know that he was almost done retrieving his property.  (*Id.* at 12.)  It appears from the allegations that Rosado had brought all his personal property outside and lined it up on the sidewalk and porch.  (*Id.*)

23

Rosado alleges that after his allotted time had expired, John Doe #2 returned to the property and told Rosado that it was time for him to go.  (*Id.*)  Doe #2 also allegedly told Rosado that "everything from the porch to the front sidewalk is forfeited" and that Rosado would be charged with trespassing if he stepped onto the property.  (*Id.* at 13.)  In contrast, however, Rosado also claims that Doe #2 asked a neighbor named Maureen whether Rosado's property could remain on the grass and sidewalk, and she responded that it was okay.  (*Id.* at 14.)  Rosado loaded up a U-Haul with his personal property.  (*Id.* at 13-14.)  It is unclear, however, whether the U-Haul contained all of Rosado's property.

Rosado next claims he forfeited his property in the U-Haul overnight.  (*Id.* at 17.)  He allegedly returned the next morning to retrieve the U-Haul, but got into an accident, and again had to forfeit the U-Haul.  (*Id.*)  He asserts that "all merchants were damaged from accident as a direct result of property seizures, U-Haul truck look like an open can of tuna," and he was contacted by U-Haul on September 6, 2024 to recover his property.  (*Id.*)  Confusingly, Rosado also contends he contacted the Kurtas Defendants on September 2, 2024, and their attorney told him that all property was disposed of and couldn't be recovered.  (*Id.* at 47, 56.)

It is unclear how Rosado's due process rights were violated when he was afforded an opportunity to claim his personal property, and did so, at least in part, until he got into an accident and then forfeited whatever property was contained in the U-Haul.  In short, Rosado has not plausibly alleged that any state actors caused a deprivation of his due process rights in connection with his personal property.  *See Keahey v. Bethel Twp., Pa.*, No. 11-7210, 2012 WL 478936, at *6 (E.D. Pa. Feb. 15, 2012) (finding no

deprivation of substantive due process rights) (citing *Reese v. Kennedy*, 865 F.2d 186, 188-89 (8th Cir. 1989) (police officers' forced eviction of plaintiff from her home did not rise to the level of shocking the conscience)).

G

Rosado also seeks to assert numerous state law claims.  (*See, e.g.*, Compl. at 25, 29-30, 41-42.)  The only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."[13]  Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,'" which "means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'"  *Lincoln Ben. Life Co.*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)).  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa*, LLC, 652 F.3d 340, 344 (3d Cir. 2011).  Rosado and at least some of the Defendants are citizens of Pennsylvania such that diversity jurisdiction does not exist over Rosado's state law claims.

IV

For the foregoing reasons, the Court will dismiss Rosado's Complaint without prejudice for failure to comply with Rule 8, for failure to state a claim, and for lack of

---

[13] Because the Court has dismissed Rosado's federal claims, it will not exercise supplemental jurisdiction over any state law claims.

jurisdiction.  Rosado will be given leave to file an amended complaint in the event he can state a clear, concise, and plausible basis for a claim within the Court's jurisdiction. An appropriate Order follows, which provides further instruction about amendment. Rosado's pending motions will be denied.

**BY THE COURT:**

***/s/ Gerald J. Pappert***
**Gerald J. Pappert, J.**
