# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GERONIMO F. ROSADO, JR.,  :
  *Plaintiff,*   :
        :
v.       :  CIVIL ACTION NO. 24-CV-6087
        :
THE CITY OF CHESTER COUNTY, :
PENNSYLVANIA, *et al.*,   :
  *Defendants.*   :

## MEMORANDUM

**Pappert, J.**             **June 5, 2025**

*Pro se* Plaintiff Geronimo F. Rosado, Jr. filed an Amended Complaint asserting both federal and state law claims pertaining to an August 6, 2024 residential eviction as well as property damages allegedly sustained while Rosado was recovering his personal property on August 30, 2024. For the following reasons, the Court will dismiss the Amended Complaint in its entirety. Rosado's federal claims will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, and his state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.

I[1]

In his initial Complaint, Rosado named as Defendants the "City of Chester County, Pennsylvania," the Chester County Housing Authority ("HACC"), McCright & Associates, Andrew and Linda Kurtas (collectively the "Kurtas Defendants"), identified as the property owners for 318 Broad Street, Spring City, Pennsylvania ("the subject property"), and Leo T. White, Esquire.  (Compl. (ECF No. 3) at 4-5.)  Rosado also named John A. Hipple, a Chester County Magisterial District Judge, and his alleged "disciples who committed pirate acts," *i.e.*, John Doe #1, identified as a constable, and John Does #2 and #3, identified as "peace officers."  (*Id.* at 4.)

In a February 19, 2025 Memorandum and Order, the Court screened the initial Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismissed it without prejudice to amendment.  *Rosado v. City of Chester Cnty., Pennsylvania*, No. 24-6087, 2025 WL 553357 (E.D. Pa. Feb. 19, 2025); *see also* ECF Nos. 11 & 12.  The Court concluded the Complaint's allegations were unclear and disjointed and failed to comply with Federal Rule of Civil Procedure Rule 8.  *Rosado*, 2025 WL 553357, at *7.  The Court also concluded that Rosado failed to state a claim for several additional reasons including, *inter alia*, lack of subject matter jurisdiction, failure to allege personal involvement or state action, and judicial immunity.  *Id.* at *8-*11.  Rosado was allowed to file an

---

[1] The following allegations are taken from the Complaint, Amended Complaint, and publicly available records of which this Court takes judicial notice.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in determining whether a pleading has stated a claim); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988) (holding that court may take judicial notice of the record from previous court proceedings).  The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

amended complaint in the event he could state a clear, concise, and plausible basis for a claim within the Court's jurisdiction. *Id.* at *12.

Rosado subsequently filed an Amended Complaint (ECF No. 16 ("Am. Compl.")), in which he names the following Defendants: City of Chester; Magisterial District Court 15-3-01; John A. Hipple (identified as a Magisterial District Judge); John Doe #1 (identified as a Constable for District Court 15-3-01); the Spring City Police Department and its police officers, Joseph T. Moore and John Doe #2; the HACC and its employees, Tanja van den Tol, Felicia Molina, Deborah Johnson, Brenda Gomez, and Noemi Villalva;[2] Attorneys Brian H. Leinhauser, Brian C. Conley and Leo T. White;[3] and Andrew and Linda Kurtas.[4] (Am. Compl. at 1-2, 6-8.) The allegations in the Amended Complaint are mostly sentence fragments, which the Court has done its best to decipher. Briefly stated, the Amended Complaint asserts two sets of allegations, each of which have distinct claims and defendants. The first pertains to the alleged termination of Rosado's "Housing Choice Voucher Program Benefits" in connection with his August 6, 2024 eviction (*id.* at 17-25) and the second pertains to "individual

---

[2] Although Noemi Villalva is not specifically listed as a defendant in the "parties" section of the Amended Complaint (*see* Am. Compl. at 6-8), Villalva is listed in the caption of the Amended Complaint (*id.* at 1), and it appears from the allegations that Rosado intended to name her as a defendant.

[3] Leo T. White is listed in the caption of the Amended Complaint, but there are no factual allegations concerning him in the Amended Complaint, nor are there any legal claims asserted against him. "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020). Accordingly, the Clerk of Court will be directed to terminate White as a Defendant.

[4] The Amended Complaint does not assert any claims against McCright & Associates, or John Doe #3. Accordingly, the Clerk of Court will be directed to terminate these Defendants from the case.

3

property damages" allegedly sustained by Rosado while he was recovering his personal property on August 30, 2024 (*id*. at 8-17).

A

Rosado claims he was a participant in the Housing Choice Voucher Program ("HCVP") through Chester County.[5]  (*Id*. at 6.)  On February 1, 2024, he entered into a "HAP. Contract engagement agreement"[6] with Defendants HACC, Molina, Johnson, Gomez, van den Tol, Villalva, and Linda and Andrew Kurtas for the rental of an apartment located at 318 Broad Street in Spring City, Pennsylvania (the "subject property") owned by the Kurtas Defendants.  (*Id*. at 4, 8, 17.)  Rosado contends that HACC, Molina, Johnson, Gomez, van den Tol, and Villalva "breached the HAP. Engagement Agreement. While acting under the color of law with Linda and Andrew Kurtas, terminating [his] voucher program without due process" in conspiracy with HACC representatives Leinhauser and Conley.  (*Id*. at 18.)

Rosado avers that van den Tol recommended the subject property even though it was "not listed on the market for rent."  (*Id*. at 19.)  He contends the property was "best described as a section 8 bait house" that was "uninhabitable" and "condemned," and he alleges that the "Housing quality standards [were] in breach of HAP. Contract pursuant 24 CFR. 982.306 Fraud & Bribery."  (*Id*.)  On April 17, 2024, Rosado stepped

---

[5] The HCVP provides eligible persons an opportunity to live in private sector housing. HACC vouchers assist families by providing funds to meet a portion of the rental costs of a lease with a private landlord.  *See* Housing Choice Voucher Program (Section 8), Housing Authority of Chester County, https://www.haccnet.org/HCVP.php (last visited May 28, 2025).

[6] It appears that by using the term "HAP," Rosado is referring to a Housing Assistance Payments Contract ("HAP Contract").  The HAP Contract is used to provide Section 8 tenant-based assistance under the HCVP of the U.S. Department of Housing and Urban Development.  *See* 24 C.F.R. § 982.451.

4

"on #24. Nails poking from under floor rug causing him to fall and knock out portable washer drain hoes." (*Id.* at 20.) As a result, the water soaked through the floors in the kitchen, bedroom, hallway, and first floor apartment. (*Id.*) Rosado allegedly contacted the HACC that same day, telling Molina the property was condemned, and an emergency inspection was scheduled for April 18, 2024. (*Id.* at 19-20.)

Rosado asserts that on April 18, 2024, the Kurtas Defendants attempted to "bribe Inspectors to pass HAP. inspection knowing it was fraud" and the inspection failed. (*Id.* at 20.) A second emergency inspection was conducted on either April 29 or April 30, 2024, and Rosado alleges that the Kurtas Defendants "interfered with HAP. Inspection for the inspectors to pass inspection without due process." (*Id.* at 20, 23.) He "filed a complaint" claiming that the Kurtas Defendants interfered "with Section 8. HAP inspection and inspectors," attempting to "pass inspection knowing it was fraud." (*Id.* at 23.) On May 1, 2024, Rosado sent a notice to the Kurtas Defendants and HACC indicating his intent to terminate the lease because of "inspection interferences." (*Id.* at 20, 23.) On May 8, 2024, the Kurtas Defendants served Rosado with a "thirty days' notice to quit in retaliation for terminating lease." (*Id.* at 24.)

Rosado contends Leinhauser sent him a "defamation letter" on June 4, 2024, stating that Rosado was "not in compliance with [the] voucher program." (*Id.* at 21.) Rosado claims the letter contained a "misrepresentation of facts and events." (*Id.*) After receiving it, Rosado telephoned Leinhauser who allegedly "weaponize[ed] [the] voucher program" by telling Rosado that if he did not comply with the Kurtas Defendants' "fraudulent" inspections, the HACC "will terminate the voucher program." (*Id.*) Following the telephone conversation, Rosado mailed a complaint to HACC,

Molina, Johnson, Gomez, van den Tol, Villalva, and Leinhauser "demanding an informal hearing." (*Id.*)

Rosado contends that since June 4, 2024, he has been "deprived of an informal hearing, and was not served in accordance with Federal Law HAP. Engagement agreement with notice and hearing." (*Id.*)  He claims the property passed inspection on January 30, 2024, but failed inspection on each of the following dates:  April 18, 2024, April 30, 2024, May 2, 2024, May 29, 2024, May 31, 2024, and July 15, 2024.  (*Id.* at 22.)  Rosado disputes his eviction, stating that because "he was under section 8. Abatement period following Failed inspections," he "could not be evicted." (*Id.*)

Public dockets show the Kurtas Defendants initiated an eviction proceeding against Rosado on May 8, 2024.[7]  *See Kurtas v. Rosado*, MJ-15301-LT-0000094-2024 (Chester Cnty.).  The Landlord/Tenant Complaint sought $12,000 for injury to real property and alleged that Rosado had breached the conditions of the lease by "destruction" of the first and second floor apartments and by "tampering with mail" and causing domestic disturbances, which necessitated the involvement of the Spring City Police Department.  *Id.*; *see also* Am. Compl. at 24.  A hearing was held before Judge Hipple on July 9, 2024, and judgment was entered against Rosado on July 12, 2024. *See Kurtas v. Rosado*, MJ-15301-LT-0000094-2024.  Rosado did not appeal, and an Order for Possession was requested and issued by Judge Hipple on July 23, 2024.  *Id.* Rosado was served with an Order for Possession on July 24, 2024 and notified to vacate the premises by August 6, 2024.  *Id.*

---

[7] On May 28, 2024, Rosado filed a cross complaint against the Kurtas Defendants.  *See Rosado v. Kurtas*, MJ-15301-LT-0000140-2024 (Chester Cnty.)  The docket reflects that judgment was entered in favor of the Kurtas Defendants on July 12, 2024.  *Id.*

Based on the forgoing allegations, Rosado asserts claims against the City of Chester, HACC, Felicia Molina, Deborah Johnson, Brenda Gomez, Tanja van den Tol, Naomi Villalva, Brian H. Leinhauser, Brian Conley, and the Kurtas Defendants. (Am. Compl. at 38-48.) Rosado claims that he was "unlawfully evicted, and defamed," subject to eviction without due process, and that Defendants HACC, Molina, Johnson, Gomez, van den Tol, Villalva, Leinhauser, and Conley improperly "terminated Voucher program during section 8. Abatement of rent period." (*Id.* at 25, 28, 38-39.) He further alleges that the termination of property interests without an informal hearing and notice violates due process, both substantive and procedural, as well as the equal protection of laws pursuant to the Fourteenth Amendment. (*Id.* at 25, 28, 38-40.) He also asserts First Amendment retaliation, violations of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("RA"), the Fair Housing Act ("FHA") and Social Security Act ("SSA"), together with various state law claims. (*Id.* at 39-44.) Rosado contends that he is currently homeless, living with his fiancé and young children at a shelter, and he is "unable [to]secure housing due to unlawful eviction on record." (*Id.* at 28.) He seeks "financial losses" following the termination of his HCVP benefits, which include relocation costs, temporary housing costs, hotel expenses, storage fees, and reimbursement for items pawned. (*Id.* at 29.) He seeks damages for emotional distress and defamation. (*Id.* at 30.) In total, Rosado seeks $477,660 from the City of Chester, HACC, Molina, Johnson, Gomez, van den Tol, Villalva, Leinhauser, Conley, and the Kurtas Defendants to compensate him for the alleged loss of his HCVP benefits. (*Id.*)

This is not the first time that Rosado has claimed that he was subjected to an unlawful eviction from the subject property.  Rosado previously asserted claims against these same defendants in a prior case.  *See Rosado v. City of Chester County*, No. 24-3802, 2025 WL 364069, at *1 (E.D. Pa. Jan. 31, 2025).[8]  In that case, Rosado asserted claims based on a federal housing voucher program and also alleged that his civil rights were violated when a state court judgment was entered against him, and a writ of possession issued, for the residential property he and his fiancé leased from the Kurtas Defendants, resulting in an "unlawful eviction" on August 6, 2024.  *Id.*  However, because Rosado sought review and rejection of an adverse state-court judgment that resulted in his eviction, the Court concluded that Rosado's claims were barred by the *Rooker-Feldman* doctrine and dismissed his case for lack of jurisdiction.  *Id.* at *5.

B

On August 09, 2024, Rosado filed a complaint with the Spring City Police Department against the Kurtas Defendants claiming he did not have adequate notice to recover his personal property following his eviction.  (Am. Compl. at 7-8.)  On August 27, 2024, the Kurtas Defendants contacted Rosado, notifying him that he could recover his personal property on August 30, 2024,[9] and that he would have access to the apartment from 10:00 a.m. until 5:00 p.m.  (*Id.* at 9.)

---

[8] The case currently before the Court was severed from Rosado's prior case, Civil Action No. 24-3802.  By Order dated November 13, 2024, the Court severed Rosado's property claims from his claims challenging the August 6, 2024 eviction.  *See* Civil Action No. 24-3802 at ECF No. 28, Civil Action No. 24-6087 at ECF No. 1.

[9] In this particular paragraph of the Amended Complaint, Rosado claims he was permitted to recover his property on August 31, 2024.  (*See* Am. Compl. at 9, ¶ 45.)  This appears to be a typographical error as the rest of the allegations in the Amended Complaint aver that the agreed upon date was August 30, 2024.  Accordingly, to maintain consistency, the Court changed the allegation to reflect the correct date.

On August 30, 2024, Rosado arrived at 11:50 a.m.  (*Id.*)  He was met by Defendant John Doe #1, who allegedly "became hostile . . . provoking [an] altercation" and prevented Rosado from speaking.  (*Id.* at 10.)  Doe #1 initially told Rosado that he feared for his life as Rosado approached, but then allegedly told Rosado that he wasn't scared and that he'd "take off [his] badge and fight."  (*Id.*)  Rosado started "recording misconduct and deprivation interfering with property Rights, and moving time," but Doe #1 "became nervous" and "immediately stop[ped] the harassment."  (*Id.*)  Doe #1 told Rosado that he had until 5:00 p.m. to obtain his personal property, but also told Rosado that if the Kurtas Defendants "say it's over sooner, it's over.  If you Refuse to leave You will be Arrested, charged with trespass understood?"  (*Id.* (emphasis omitted).)  Rosado claims Doe #1 "harassed and interfered with his "Property rights," resulting in a loss of "30 minutes in moving time."  (*Id.* at 11.)  After Doe #1 left, Rosado noticed that his "65-inch Roku Television [was] kicked in the corner leaving traces of footprint."  (*Id.*)  Rosado alleges that Doe #1 damaged his "$700.00 Roku Television without due process."  (*Id.*)

When Officer Moore arrived, he reminded Rosado that he had until 5:00 p.m. to retrieve his personal property.  (*Id.*)  Rosado asserts that Moore harassed and interrogated him by conducting a "preliminary investigation" as to Rosado's property while Rosado was "packing and loading a 20 Ft. U-Haul."  (*Id.*)  Moore allegedly questioned Rosado about a "broken plate," and Rosado acknowledged that the concrete cracked when he dropped a weight onto it.  (*Id.*)  Moore also told Rosado that the neighbors were making noise complaints, and Rosado explained to Moore that he had

fallen down the steps with the "baby bed, and vanity desk" because the second-floor

staircase was narrow.  (*Id.* at 12.)

At 4:03 p.m., Rosado sent a text message to the Kurtas Defendants to tell them

he was almost done and that "several items [were] left behind" because he was unable

to load them into the U-Haul "due to time and narrow steps with two flights of narrow

steps."  (*Id.*)  Rosado asserts that he was the only one packing and loading because Doe

#1 allegedly caused Rosado's paid assistant[10] to feel unsafe "after witnessing the

misconduct and deprivation of property rights."  (*Id.*)  Rosado alleges he "was

discriminated against, due to his disability, visual Impairment" and was "deprived of

due process" and "not provided notice of property rights."  (*Id.*)  He asserts that he had

"everything outside and Neatly and lined everything on public sidewalks, and porch to

complete the process."  (*Id.*)

At 5:18 p.m., Moore returned to the property, telling Rosado that it was time to

go.  (*Id.* at 13.)  Moore also allegedly told Rosado that "everything from the porch to the

front sidewalk is forfeited" and that if Rosado stepped over, he would "be charged with

trespassing."  (*Id.*)  Rosado says a "total of about #30-to-40-gallon bags filled with

personal property" were left on the porch and public sidewalk.  (*Id.*)  Rosado attempted

to speak with the Kurtas Defendants, who were present at the subject property, but

Moore allegedly "interfere[ed] with property rights," by telling Rosado that he could not

speak to the Kurtas Defendants.  (*Id.* at 13-14.)  Moore also allegedly told Rosado that

he could not "recover property from the porch or in front of house" unless he could

---

[10] Rosado says he hired a "helper, and driver of 20-Ft. U-Haul" to assist him.  (Am. Compl.
at 12, 16.)

retrieve it with a "stick." (*Id.* at 14.) Rosado attempted to use a stick to obtain his

property. (*Id.*) While doing so, Rosado told Moore the sidewalk to the front of the house

was public property, and that Rosado would "file a lien in Federal Court on the property

for interfering while depriving [him] of property rights." (*Id.*) Moore "walk[ed] up and

down investigating [Rosado's] personal property" and then allegedly checked with a

neighbor named Maureen and obtained her consent for Rosado's property to remain on

the lawn and sidewalk. (*Id.*)

Moore then joined the Kurtas Defendants and continued to shout at Rosado,

"Hurry up, you had until 5 Pm. And you are still loading things in U-Haul, hurry up or

be charged with trespassing!" (*Id.* at 15.) Rosado told Moore to stop "hiding behind

[his] Badge" and that if he wanted to look for criminals, the "City of Philadelphia police

Department [is] hiring [and] you can apply there." (*Id.*) Moore allegedly became

infuriated, and asked Rosado to provide his name. (*Id.*) Rosado responded, "What, you

know who I am, Why are you still harassing me, to subject an illegal search, and

seizure, I do not consent." (*Id.*) Rosado avers that he started to record "the

continuation of harassment, interrogations, and illegal search and seizure, without

probable cause or legal justification." (*Id.*) Moore told Rosado he would be charged

with providing false identification and trespassing.[11] (*Id.*) Rosado then placed Moore

---

[11] A review of public records reveals that Rosado was cited by the Spring City Borough
Police Department for the summary offenses of defiant criminal trespass, disorderly
conduct – unreasonable noise, and harassment in violation of 18 Pa. Cons. Stat. §§
3503(b)(1)(i), 5503(a)(2), and 2709(a)(3), respectively. *Commonwealth v. Rosado*, MJ-15301-
NT-0000350-2024, MJ-15301-NT-0000351-2024, MJ-15301-NT-0000358-2024 (MDJ
Chester). All offenses occurred on August 30, 2024, and Moore is listed as the citing officer.
(*Id.*) Rosado pled guilty to all offenses on September 19, 2024, and he was sentenced to pay
fines and costs. (*Id.*)

and John Doe #2 on "Judicial Notice [that] if any criminal charges are filed, [Rosado would] be forced to file a federal lien for the illegal search and seizures." (*Id.* at 16.)

Rosado claims that because of Moore and Doe #2's "deprivation of property rights [and] continued harassment while loading U-Haul," he "had to forfeit 30-40 bags of personal property and leave U-Haul overnight." (*Id.*) On August 31, 2024, Rosado arrived early in the morning with his assistant to retrieve the U-Haul and noticed that the bags containing his personal property were gone. (*Id.*) The assistant crashed the U-Haul, striking a bridge, and Rosado suffered cuts, bruises, head pain, and emotional distress when his "head went through the windshield." (*Id.* at 17.) On September 6, 2024, the U-Haul facility contacted Rosado to "recover possessions" but "[a]ll merchandise was damaged" and Rosado avers that the "U-Haul looked like an open can of tuna with cutting edges and Roof hanging on by a thread." (*Id.*)

Based on the foregoing allegations, Rosado asserts that John Doe #1, the City of Chester, the Spring City Police Department, Joseph T. Moore, John Doe #2, Andrew and Linda Kurtas, and John A. Hipple violated his civil rights under the Fourteenth Amendment by depriving him of "life, liberty, and property during eviction proceedings without due process of law." (*Id.* at 30-31.) Specifically, Rosado contends that Doe #1 "acted under the color of state law" when he damaged Rosado's television valued at $700. (*Id.* at 25.) He claims the City of Chester, Spring City Police, Moore, Doe #2, Judge Hipple, and the Kurtas Defendants disposed of his sentimental and personal property contained in trash bags "without notice, hearing or opportunity to be heard, in violation of the Fourteenth Amendment and Equal protection of laws." (*Id.* at 25-26, 31-32, 36-37.) Rosado further contends these Defendants are responsible for property

damages that occurred as a result of the August 31, 2024 U-Haul accident.  (*Id.* at 27.)
He alleges that the Kurtas Defendants, Doe #1, Moore, and Doe #2 violated his rights
under the ADA by failing "to provide reasonable accommodation" for his "visual
impairment disability."  (*Id.* at 33.)  Finally, Rosado claims Moore violated his First
Amendment rights by restricting his "ability to communicate" with the Kurtas
Defendants while he was recovering his personal property on August 30, 2024.  (*Id.* at
33-34.)  Rosado also asserts state law claims.  (*Id.* at 35-36.)  He seeks a total of
$189,679 in property and emotional distress damages.  (*Id.* at 28.)  He also seeks
punitive damages, defamation damages, and declaratory and injunctive relief.  (*Id.* at
37.)

In addition to the Amended Complaint, Rosado filed a Motion to Reinstate
Section 8 Voucher Program Benefits Pursuant to Rule 60(b) (*see* ECF No. 14), another
Motion to Proceed *In Forma Pauperis* (ECF No. 15), and a Motion to Strike Pursuant to
Federal Rule of Civil Procedure 12(f) (ECF No. 19).  The Kurtas Defendants filed a
Motion to Dismiss the Amended Complaint (ECF No. 20) and in response, Rosado filed
a Motion to Strike Pursuant to Federal Rule of Civil Procedure 12(f) (ECF No. 21).

## II

As Rosado is proceeding *in forma pauperis* (*see* ECF No. 11), 28 U.S.C. §
1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state
a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed
by the same standard applicable to motions to dismiss under Federal Rule of Civil
Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999),
which requires the Court to determine whether the complaint contains "sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  At the screening stage, the Court will accept the facts alleged in the *pro se* Amended Complaint as true, draw all reasonable inferences in Rosado's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim."  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Because Rosado is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants."  *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

III

A

Rosado asserts both constitutional and state law claims against the City of Chester, HACC, Molina, Johnson, Gomez, van den Tol, Villalva, Leinhauser, Conley, as well as the Kurtas Defendants.  (Am. Compl. at 38-48.)  He claims they, *inter alia*, improperly terminated his HVCP benefits without due process in connection with the August 6, 2024 "unlawful eviction" and violated his rights under the First and Fourteenth Amendments, the ADA, RA, FHA, and SSA.  (*Id.* at 25, 28, 38-44.)  Rosado previously asserted similar claims against the same defendants in a prior case before the Court, *i.e.*, Civil Action No. 24-3802.  *See Rosado*, 2025 WL 364069, at *1.[12]  The case currently before the Court was severed from Civil Action No. 24-3802 by Order dated November 13, 2024.  *See* Civil Action No. 24-3802 at ECF No. 28 and Civil Action No. 24-6087 at ECF No. 1.  Under the November 13, 2024 Order, any claims Rosado sought to assert concerning the August 6, 2024 eviction would remain in Civil Action 24-3802, and any claims Rosado sought to assert concerning his personal property would proceed in this case.  *Id.*  However, for reasons unclear to the Court, Rosado is attempting to revisit claims stemming from his August 6, 2024 eviction by reasserting them in his Amended Complaint.  Considering the Court's November 13, 2024 severance order, and for the additional reasons that follow, Rosado cannot proceed in

---

[12] On January 31, 2025, the Court dismissed Rosado's claims in Civil Action 24-3802 against the same parties – City of Chester, HACC, Felicia Molina, Deborah Johnson, Brenda Gomez, Tanja van den Tol, Naomi Villalva, Brian H. Leinhauser, Brian Conley, and Andrew and Linda Kurtas – concerning the same subject property.  Rosado did not appeal the dismissal.

this case with respect to any claims concerning his August 6, 2024 eviction and termination of housing benefits.

Rosado may not proceed on his claims pertaining to the August 6, 2024 eviction because they are barred by claim preclusion. "Claim preclusion — which some courts and commentators also call *res judicata* — protects defendants from the risk of repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final judgment on the merits." *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021) (internal quotations omitted). Claim preclusion prevents parties from raising issues that could have been raised and decided in a prior case regardless of whether those issues were litigated. *Id.* In other words, "[t]he prior judgment's preclusive effect . . . extends not only to the claims that the plaintiff brought in the first action, but also to any claims the plaintiff could have asserted in the previous lawsuit." *Id.* at 231-32. "Claim preclusion similarly reaches theories of recovery: a plaintiff who asserts a different theory of recovery in a separate lawsuit cannot avoid claim preclusion when the events underlying the two suits are essentially the same." *Id.* at 232; *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d Cir. 2010) ("'Rather than resting on the specific legal theory invoked, *res judicata* generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims.'") (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983-84 (3d Cir. 1984)).

Federal courts are required to "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Lance v. Dennis*, 546 U.S. 459, 466 (2006). Where the prior

16

litigation occurred in Pennsylvania courts, the Court "must give the same preclusive effect to the judgment in [a] common pleas court case that the courts in Pennsylvania, the state in which the judgment was entered, would give." *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548 (3d Cir. 2006). Under Pennsylvania law, *res judicata* applies when the prior action and the subsequent action share the following four factors in common: "(1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued." *Id.* (citing *Bearoff v. Bearoff Bros., Inc.*, 458 Pa. 494, 327 A.2d 72, 74 (1974)).

All elements of *res judicata* exist here. Rosado's claims are based on allegations related to his lease of the subject property and the landlord-tenant action brought by the Kurtas Defendants that resulted in his eviction. Regarding the "cause of action" element, Rosado could have raised his current claims during the state court proceedings because those claims involve the same factual predicate. *See Pondexter v. Allegheny Cnty. Hous. Auth.*, 329 F. App'x 347, 350 (3d Cir. 2009) (*per curiam*) ("To the extent that Pondexter's complaint can be read to assert a claim against Green Meadows under [the FHA], Pondexter could have raised the claim during the state court proceedings because the claim involved the same factual predicate, *i.e.*, Green Meadows' allegedly racially discriminatory eviction of Pondexter."); *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 549 (3d Cir. 2006) (holding that Fair Housing Act claim against landlord and its management company was barred by *res judicata* due to litigation in eviction action where "the underlying events giving rise to the various legal claims [were] identical because in both actions Turner alleges the same wrongful refusal of her section 8 vouchers, failure to refer her to social services agencies, and failure to

evaluate her request for accommodation"); *In re Lynch*, No. 18-2178, 2018 WL 3208165, at *7 (E.D. Pa. June 28, 2018) (finding FHA claims barred by claim preclusion because such claims were raised as defenses to prior state court eviction action).  Accordingly, the state court's judgments in the landlord-tenant matter, *Kurtas v. Rosado*, MJ-15301-LT-0000094-2024 (Chester Cnty.), and cross complaint matter, *Rosado v. Kurtas*, MJ-15301-LT-0000140-2024 (Chester Cnty.), preclude Rosado from asserting claims based on an August 6, 2024 "unlawful eviction" in this lawsuit.[13]

### B

Rosado asserts both constitutional and state law claims against John Doe #1, City of Chester, Spring City Police Department, Joseph T. Moore, John Doe #2, John A. Hipple, and Andrew and Linda Kurtas.  (Am. Compl. at 30-37.)

### 1

Rosado alleges, *inter alia*, that these Defendants deprived him of due process when they disposed of his personal property.  (*Id.* at 30-33.)  He brings his constitutional claims pursuant to 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  "The color of state law element is a threshold issue; there is no liability under § 1983 for those not

---

[13] While the Court has concluded that Rosado may not proceed against the Kurtas Defendants with respect to any claims concerning the August 6, 2024 eviction and termination of benefits, the Court will address Rosado's claims against them based on his separate and distinct allegations concerning the recovery of his personal property on August 30, 2024.

acting under color of law." *Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995).

a

The Kurtas Defendants are not state actors subject to liability under § 1983. Whether a private entity is acting under color of state law – *i.e.*, whether the defendant is a state actor subject to liability under § 1983 – depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the Third Circuit has] outlined three broad tests under Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

Rosado has not alleged facts to support a plausible conclusion that the Kurtas Defendants meet any of the foregoing tests, and nothing in the Amended Complaint suggests any factual or legal basis for concluding that they are state actors who could be held liable under § 1983. *See, e.g., Dejesus v. Vicky*, No. 21-1403, 2021 WL 1546228, at *3-4 (E.D. Pa. Apr. 20, 2021) (finding that employee of apartment complex and rental company itself were private individuals or entities involved in property rental and not

state actors for purposes of constitutional claims) (citing cases); *see also Hussein v. New Jersey*, 403 F. App'x 712, 716 (3d Cir. 2010) (*per curiam*) (affirming dismissal of constitutional claims against landlord because landlord was not a state actor); *Benford v. Smith*, No. 04-337, 2005 WL 1325003, at *3 (E.D. Tenn. June 3, 2005) (finding that private landlords, even ones participating in the Department of Housing and Urban Development's Section 8 housing program, are not considered state actors and thus cannot be liable under § 1983. Accordingly, Rosado has not stated any plausible constitutional claims against the Kurtas Defendants.[14]

b

To state a claim for municipal liability, a plaintiff must allege that the City's policies or customs caused the alleged constitutional violation. *See Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). It is not enough to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Estate of Roman v. City of Newark*,

---

[14] To the extent that Rosado accuses the Kurtas Defendants of conspiring or colluding with state actors, his allegations are insufficient and conclusory. "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 179 (3d Cir. 2010) (no conspiracy claim where plaintiff "failed to allege except in general terms the approximate time when the agreement was made, the specific parties to the agreement . . . , the period of the conspiracy, or the object of the conspiracy"); *see also Pittman v. Martin*, 569 F. App'x 89, 91-92 (3d Cir. 2014) (*per curiam*) (explaining that "conclusory allegations of conspiracy" were "insufficient from a pleading perspective" to justify treating non-state actors as state actors); *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 612 (3d Cir. 2011) (noting that "mere approval is not state action" when a state actor "approves" a private actor's choice or conduct).

914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Id.*  Because Rosado fails to allege he suffered a constitutional violation due to a policy or custom of the City, any *Monell* claim against it would not be plausible.  Accordingly, his claims against the City of Chester will be dismissed.

c

Following the decision in *Monell*, courts concluded that a police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions.  *See e.g. Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993).  Thus, while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not.[15]  *Id.*; *Martin v. Red Lion Police Dept.*, 146 F. App'x. 558, 562 n.3 (3d Cir. 2005) (*per curiam*) (stating that police department is not a proper defendant in an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) ("As in past cases, we treat the municipality and its police department as a single entity for purposes of section 1983 liability" citing *Colburn v. Upper Darby Township*, 838 F.2d 663, 671 n.7 (3d Cir.1988)); *Hadesty v. Rush Twp. Police Dep't*, No. 14-2319, 2016 WL 1039063, at *9 n.4 (M.D. Pa. Mar. 15,

---

[15] Even if Rosado had named Spring City as a defendant, the claim would still not be plausible.  To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation.  *See Monell*, 436 U.S. at 694; *Natale,* 318 F.3d at 583-84.

2016).  Because it is not a "person," the Spring City Police Department is not a proper

defendant in this case under § 1983 and will be dismissed.

d

Rosado has named "Magistrate District Court 15-3-01" as a Defendant, alleging

that it "is legally responsible for the deprivation of individual property rights."  (Am.

Compl. at 6.)  The Eleventh Amendment bars suits against a state and its agencies in

federal court that seek monetary damages.  *See Pennhurst State Sch. and Hosp. v.

Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234,

238 (3d Cir. 2003).  The Commonwealth of Pennsylvania has not waived that immunity.

*See* 42 Pa. Cons. Stat. § 8521(b).  Magisterial District Courts, as part of Pennsylvania's

unified judicial system, share in the Commonwealth's Eleventh Amendment immunity.

*See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005).  Moreover,

states and their agencies are not considered "persons" for purposes of § 1983.  *See Will

v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989).  Accordingly, because the

Magisterial District Court is not subject to liability under § 1983, the claims against it

must be dismissed.

e

Rosado alleges that Judge Hipple assisted in "disposing of individual property . .

. during eviction proceedings without due process of law."  (*See* Am. Compl. at 31.)

Rosado's claims against Judge Hipple are not plausible because judges are entitled to

absolute immunity from civil rights claims that are based on acts or omissions taken in

their judicial capacity, so long as they do not act in the complete absence of all

22

jurisdiction.[16]  *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (*per curiam*); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (*per curiam*).  An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000).  Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).  Because judges must feel free to act without fear of incurring personal liability for their actions in court, judicial immunity remains in force even if the actions are alleged to be legally incorrect, in bad faith, malicious, or corrupt, *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991), or are taken as a result of a conspiracy with others, *Dennis v. Sparks*, 449 U.S. 24, 27 (1980).  As Rosado's claims against Judge Hipple are based on acts he took in his judicial capacity while presiding over an eviction matter over which he had jurisdiction, Judge Hipple is entitled to absolute judicial immunity.  *See Lee v. Gallina Mecca*, No. 22-2871, 2023 WL 5814783, at *4 (3d Cir. Sept. 8, 2023) ("But even accepting Lee's allegations as true, judicial acts that appear to be unfair, malicious, or *ex parte* are not stripped of their judicial immunity); *Palmer v. PHA*, No. 21-2906, 2021 WL 3662401, at *4 (E.D. Pa. Aug. 17, 2021) (judges entitled to absolute judicial immunity based on acts they took in their official capacities while presiding over eviction proceeding); *Martin v. Bicking*, 30 F. Supp. 2d 511, 513 (E.D. Pa.

---

[16] Both judges of general and limited jurisdiction, including magisterial district judges, are entitled to judicial immunity.  *See Figueroa*, 208 F.3d at 441 (concluding that magisterial district judges, even though they preside over courts of limited jurisdiction, are entitled to protections of judicial immunity).

1998) (District justice was judicially immune from liability for actions taken by justice arising out of plaintiff's trial and sentencing for summary offenses**)**.

f

Rosado alleges Officer Moore "restricted [his] speech" and "ability to communicate" with the Kurtas Defendants while Rosado was attempting to recover his personal property on August 30, 2024. (Am. Compl. at 33-34.) Rosado contends that the restriction by Moore "was not justified by any compelling government interest, legal authority or legal justification." (*Id.* at 34.) Although Rosado contends that Moore "deprived him of speaking with" the Kurtas Defendants, Rosado also claims he was able to communicate with the Kurtas Defendants via text messaging on that same date. (*Id.* at 12.)

With respect to Rosado's claim that Moore violated his First Amendment right to freedom of speech, "[t]o analyze whether a police officer has violated an individual's First Amendment right to free speech, pursuant to § 1983, the Court conducts a three-part inquiry: (1) 'whether the First Amendment protects the speech at issue'; (2) the 'nature of the forum'; and (3) 'whether the [government's] justifications for exclusion from the relevant forum satisfy the requisite standard.'" *Kreis v. Smith*, No. 24-3686, 2024 WL 4756905, at *2 (E.D. Pa. Nov. 12, 2024) (citing *Grant v. City of Phila.*, 637 F. Supp. 3d 247, 267 (E.D. Pa. 2022), *aff'd*, No. 22-3200, 2024 WL 1328312 (3d Cir. Mar. 28, 2024), *cert. denied sub nom.*, No. 24-243, 145 S. Ct. 380 (2024) (quoting *Turco v. City of Englewood*, 935 F.3d 155, 161-62 (3d Cir. 2019)) (granting summary judgment on qualified immunity grounds to police officers who were alleged to have violated plaintiff's First Amendment right to free speech when they removed him from a public

Christmas shopping venue where he was dressed as Jesus and speaking to the crowd about his religious beliefs)).

There is no plausible basis for a First Amendment violation. Setting aside Rosado's conclusory allegations, none of the facts underlying his claims plausibly suggest that Moore unlawfully infringed on his freedom of speech or freedom of expression in a manner that violated the First Amendment. Rosado has not identified the content of his intended speech that was allegedly affected by Moore's conduct, and therefore has not plausibly alleged that his speech was protected by the First Amendment. Rosado also fails to describe how this one instance substantially interfered with his right to free speech especially since it appears by his own allegations that he utilized other means of communication to "speak" with the Kurtas Defendants. Moreover, "[t]he First Amendment does not guarantee the right to communicate one's views at all times and places and in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981). While the government is often constrained in how it handles a speaker engaged in expressive conduct in one of its own forums, "[t]he Constitution does not disable private property owners and private lessees from exercising editorial discretion over speech and speakers on their property." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1931 (2019); *Hudgens v. NLRB*, 424 U.S. 507, 520-21 (1976) (stating that "the constitutional guarantee of free expression has no part to play" in incidents involving speech activities on private property unless the property has been wholly "dedicat[ed] . . . to public use") (citation and internal quotation marks omitted). The Court will dismiss Rosado's First Amendment claim against Moore accordingly.

g

Rosado claims his civil rights under the Fourteenth Amendment were violated because he was deprived of "life, liberty, and property during eviction proceedings without due process of law." (Am. Compl. at 30-31.)  Specifically, as to the Defendants that have not yet been dismissed, Rosado contends that Doe #1 "acted under the color of state law" when he damaged Rosado's television valued at $700.  (*Id.* at 25, 30.)  Rosado also avers that Moore and Doe #2, disposed of his sentimental and personal property contained in trash bags "without notice, hearing or opportunity to be heard, in violation of the Fourteenth Amendment and Equal protection of laws."[17]  (*Id.* at 25-26, 31-32, 36-37.)

Fourteenth Amendment procedural due process creates a "guarantee of fair procedure" whereby an individual can assert that he was deprived of a life, liberty, or

[17] Rosado also contends that he "has a right to be free from discrimination based on race, color, national origin, sex, religion, disability, and familial status." (Am. Compl. at 35-36.) However, a "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other." *Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)); *Alexis v. Sessions*, No. 18-2099, 2018 WL 5077899, at *2 n.1 (D.N.J. Oct. 18, 2018).  Plaintiffs pursuing an equal protection claim must allege that they were purposefully discriminated against, in that "they received different treatment from that received by other individuals *similarly situated*." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005) (emphasis in original).  Rosado's generalized, conclusory allegations, which do not directly implicate any named Defendant, do not plausibly assert that the Defendants violated Rosado's equal protection rights by treating him differently than others who were similarly situated. *See Santos v. Sec'y of D.H.S.*, 532 F. App'x 29, 34 (3d Cir. 2013) (*per curiam*) (pleading was properly dismissed where "the amended complaint assert[ed] blanket, non-specific allegations that Santos was treated differently because of his race and/or gender" and did not include "specific allegations illustrating how Santos was treated differently than those similarly situated").

property interest without due process of law.  *See Rankin v. Smithburger*, No. 12-1373, 2013 WL 3550894, at *9 (W.D. Pa. July 11, 2013) (citing *Zinermon v. Burch,* 494 U.S. 113, 125 (1990)).  "It is well established that possessory interests in property invoke procedural due process protections."  *See  Gale v. Storti*, 608 F. Supp. 2d 629, 634 (E.D. Pa. 2009) (citing *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)).  A plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life liberty, or property, and (2) the procedures available to him did not provide due process of law."  *Rosado v. City of Coatesville*, No. 19-2426, 2020 WL 1508351, at *3 (E.D. Pa. Mar. 30, 2020) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 255, 234 (3d Cir. 2006)).

A plaintiff may also assert a claim under the "substantive" prong of the Due Process Clause, which bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.  *Zinermon v. Burch,* 494 U.S. 113, 125 (1990).  Due process is not a technical conception with a fixed content unrelated to time, place, and circumstance.  *Gilbert v. Homar,* 520 U.S. 924, 930 (1997).  Rather, "due process is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972).

Rosado's speculative and conclusory allegations do not assert plausibly that Defendants Doe #1, Moore, and Doe #2 violated his due process rights.  Notably, following his August 6, 2024 eviction, the Kurtas Defendants provided Rosado with notice and an opportunity to recover his personal property from the property on August

30, 2024, giving him seven hours in which to do so.[18]  (Am. Compl. at 9.)  On August 30, 2024, Rosado arrived nearly two hours late to the subject property with a 20-foot U-Haul.  (*Id.*)  He avers that he was "the only one packing [and] loading" the U-Haul even though other allegations in the Amended Complaint suggest that Rosado was not alone.[19]  (*Id.* at 10, 12.)  Rosado was told several times by Doe #1, Moore, and Doe #2 that he had until 5:00 p.m. to obtain his personal property, and that if he refused to leave when told, he would be arrested for trespassing.  (*Id.* at 10-15.)

At 4:03 p.m., Rosado sent a text message to the Kurtas Defendants to let them know that he was almost done retrieving his property and that "several items [were] left behind" because he was unable to load them into the U-Haul.  (*Id.* at 12.)  By this time, it appears Rosado brought all his personal property outside and lined it up on the public sidewalk and porch.  (*Id.*)  At 5:18 p.m., Moore told Rosado that it was time for him to go and that "everything" Rosado had lined up "from the porch to the front sidewalk [was] forfeited" and that if Rosado stepped over, he would "be charged with trespassing."  (*Id.* at 13.)  Moore also allegedly told Rosado that he could not "recover property from the porch or in front of house" unless he could retrieve it with a "stick." (*Id.* at 14.)  Contrary to these allegations, however, Rosado also alleges at

---

[18] This notice is in addition to the notice Rosado received in connection with the state court eviction proceeding.  As explained above, the Kurtas Defendants initiated an eviction proceeding against Rosado on May 8, 2024.  *See Kurtas*, MJ-15301-LT-0000094-2024. Rosado attended a hearing before Judge Hipple on July 9, 2024, and judgment was entered against Rosado on July 12, 2024.  *Id.*  Rosado did not appeal, and an Order for Possession was issued by Judge Hipple on July 23, 2024.  *Id.*  Rosado was served with an Order for Possession on July 24, 2024 and notified to vacate the premises by August 6, 2024.  *Id.*

[19] Rosado avers that Doe #1 was speaking with his fiancé in front of the subject property. (Am. Compl. at 10.)  Rosado also claims he was accompanied by his fiancé and two daughters.  (*Id.*)

approximately 5:30 p.m., Moore sought and obtained permission from a neighbor named Maureen for Rosado's personal property, that Rosado had packed into garbage bags, to remain on the lawn and sidewalk.  (*Id.* at 14.)  Rosado contends that he "had to forfeit 30-40 bags of personal property and leave U-Haul overnight."  (*Id.* at 16.)  On August 31, 2024, Rosado arrived early in the morning to retrieve the U-Haul and noticed that "his individual property inside #30-gallon trash bags" valued at $34,875.00 was gone.  (*Id.* at 17, 26.)

As with his initial pleading, it is unclear how Rosado's due process rights were violated when he was given an opportunity to claim his personal property, and did so, at least in part, until he decided to leave his property in garbage bags on a lawn and public sidewalk.  Rosado jumps to the conclusion that Moore and Doe #2, along with several other Defendants,[20] "disposed of" his personal property even though Moore sought permission for Rosado's property to remain and Doe #2 was observed walking to his patrol car before Rosado even left the subject property.[21]  (*Id.* at 14-15.)  Moreover, Rosado's assertion that Doe #1 kicked his television simply because Rosado observed Doe #1 and the Kurtas Defendants standing near it (*id.* at 11), is completely speculative.  In short, Rosado has not plausibly alleged that any state actors caused a deprivation of his due process rights in connection with his personal property.  *See Keahey v. Bethel Twp., Pa.*, No. 11-7210, 2012 WL 478936, at *6 (E.D. Pa. Feb. 15, 2012) (finding no deprivation of substantive due process rights) (citing *Reese v.*

---

[20] Rosado also avers that the City of Chester, Spring City Police Department, Judge Hipple, and the Kurtas Defendants disposed of his personal property.  (Am. Compl. at 17.)

[21] Rosado alleges that he observed Doe #2 walking to his patrol car shortly after Moore had spoken to neighbor Maureen.  (Am. Compl. at 16.)

*Kennedy*, 865 F.2d 186, 188-89 (8th Cir. 1989) (police officers' forced eviction of plaintiff from her home did not rise to the level of shocking the conscience)).  Viewing the allegations of the Amended Complaint in conjunction with the state court eviction proceedings, it appears that Doe #1, Moore, and Doe #2 were merely present at the subject property on August 30, 2024 in a peacekeeping capacity and Rosado was provided with ample notice and opportunity to retrieve  his personal property.

C

Rosado asserts claims under Title II of the ADA and Section 504 of the RA against the Kurtas Defendants and Defendants Doe #1, Moore, and Doe #2.[22]  (Am. Compl. at 33.)  "Both the ADA and the RA require public entities . . . to provide, in all of their programs, services, and activities, a reasonable accommodation to individuals with disabilities."  *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 287 (3d Cir. 2019).  "Public entity" has been  defined as any state or local government, its agencies or instrumentalities, and the National Railroad Passenger Corporation or any

---

[22] Section 504 of the RA provides:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).

> Section 202 of the ADA provides:

> Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

30

commuter authority. *Bowens v. Wetzel*, 674 F. App'x 133, 136 (3d Cir. 2017) (*per curiam*) (citing 42 U.S.C. § 12131); *see also Datto v. Harrison*, 664 F.Supp.2d 472, 486 (E.D. Pa. 2009).

Rosado's claims under Title II of the ADA and Section 504 of the RA are not plausible because none of these Defendants are public entities, and Rosado has also failed to plausibly allege that any of the Defendants receive federal assistance for purposes of the RA. *See Kokinda v. Pennsylvania Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (*per curiam*) ("Kokinda's claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability."); *Bowens*, 674 at 136 ("[T]he District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim."); *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) (stating that "suits may be brought pursuant to Section 504 against recipients of federal financial assistance, but not against individuals"); *El*, 315 F. Supp. 3d at 843-44 (dismissing Title II ADA claim for plaintiff's failure to allege discrimination by a public entity); *see also Boggi v. Med. Review & Accrediting Council*, 415 F. App'x 411, 414-15 (3d Cir. 2011) (*per curiam*) (holding that plaintiff failed to state a viable ADA claim against any of the "non-entity defendants" that were sued in their individual capacities). Accordingly, Rosado's claims under Title II of the ADA and Section 504 of the RA will be dismissed with prejudice.

D

31

Rosado also seeks to assert state law claims. (*See, e.g.*, Am. Compl. at 35-36.) The only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."[23]  Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,'" which "means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co.*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)).  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa*, LLC, 652 F.3d 340, 344 (3d Cir. 2011).  Rosado and at least some of the Defendants are citizens of Pennsylvania such that diversity jurisdiction does not exist over Rosado's state law claims.

## IV

For the foregoing reasons, the Court will dismiss Rosado's Amended Complaint in its entirety.  All federal law claims will be dismissed with prejudice and without leave to amend for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Rosado's state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.  Further attempts at amendment would be futile.  *See Jones v. Unknown D.O.C. Bus Driver & Transportation Crew*, 944 F.3d 478, 483 (3d Cir. 2019)

---

[23] Because the Court has dismissed Rosado's federal claims, it will not exercise supplemental jurisdiction over any state law claims.

(amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story"); *Robinson v. Delbalso*, No. 22-2378, slip op. at 5 (3d. Cir. Nov. 28, 2022) (*per curiam*) ("[B]ecause Robinson has had two opportunities to amend his complaint, declining to grant further leave to amend was proper." ).  An appropriate Order follows, which dismisses this case.  All pending motions are also denied.

**BY THE COURT:**

***/s/ Gerald J. Pappert***
**Gerald J. Pappert, J.**